UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JOHN AUERBACH, | ) |
| Plaintiff | ) ) ) |
| v. | ) Case No. |
| IRHYTHM TECHNOLOGIES, INC., | ) ***JURY TRIAL DEMANDED*** |
| Defendant. | ) ) ) |

**COMPLAINT AT LAW**

COMES NOW, Plaintiff, JOHN AUERBACH ("Auerbach" or "Plaintiff"), by and through his attorneys, L&G LAW GROUP LLP, and for his Complaint at Law against Defendant, IRHYTHM TECHNOLOGIES, INC. ("iRhythm" or "Defendant"), alleges as follows:

**INTRODUCTION**

1. iRhythm discriminated against Auerbach when it unlawfully accessed Auerbach's Protected Health Information ("PHI") in order to make an employment decision and failed to hire him because of a perceived disability in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. ("ADA"), Illinois Human Rights Act, 775 ILCS 5/1 et seq. ("IHRA"). Further, iRhythm's unlawful access to Auerbach's PHI was an intrusion upon his seclusion, which caused Auerbach additional anguish and damages.

**PARTIES**

2. Plaintiff is an individual residing in Cook County, Illinois.

3. Defendant iRhythm Technologies, Inc. is a California corporation authorized to do business in Illinois with an office at 2 Marriott Drive, Lincolnshire, Lake County, Illinois 60069.

4. At all relevant times, iRhythm has more than fifteen (15) employees and in all respects was a covered entity and employer under 42 U.S.C. §§ 12111(2), 12111(5)(A), and 12111(7); 29 C.F.R. § 1630.2 and other sections of the ADA and regulations promulgated pursuant to the ADA.

## JURISDICTION & VENUE

5. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because Plaintiff's claims involve federal questions arising under the ADA, and pursuant to 28 U.S.C. § 1343(a)(4), as an action to secure equitable or other relief under a civil rights statute.

6. This Court also has supplemental jurisdiction over Plaintiff's claims for violation of the IHRA and intrusion upon seclusion pursuant to 28 U.S.C. § 1367.

7. Venue for this action is proper in the United States District Court for the Northern District of Illinois, Eastern Division, under 28 U.S.C. § 1391(b)(1)-(2) and (d) because the employment practices hereafter alleged to be unlawful were committed in the Northern District of Illinois and because iRhythm's contacts are sufficient to subject it to personal jurisdiction in that district.

8. All conditions precedent to suit have been met. Plaintiff timely filed a charge of discrimination with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC"). This Complaint is filed within ninety (90) days of Plaintiff's receipt of their right to sue letter from the EEOC. A true and copy of the Notice of Right to Sue is attached hereto as "**Exhibit A**" and made a part of this Complaint as if fully incorporated herein.

## FACTUAL ALLEGATIONS

9. iRhythm is a digital healthcare company that designs products assisting physicians and patients with diagnosing arrhythmias. iRhythm designs wearable bio-sensing technology with cloud-based data analytics and machine learning capabilities.

10. On June 19, 2018 Auerbach was diagnosed with Atrial Fibrillation with Ventricular Response ("AFib"). AFib is an arrythmia or irregular heartbeat, which if left untreated could lead to a stroke or heart failure.

11. Auerbach personally used iRhythm's mobile telemetry monitor called the "Zio Patch"

12. Auerbach has over ten (10) years of experience in the medical sales. A friend of Auerbach's worked at iRhythm and was responsible for training new sales representatives. She referred Auerbach to iRhythm's recruiters for a Territory Sales Manager position at iRhythm.

13. Before applying to iRhythm, Auerbach was Senior Territory Manager at Teleflex, Inc., and responsible for $4.1 million revenue for his territories in that position. Plaintiff also added several sales leadership teams including Voice of the Field (VOF), Field sales trainer, Leadership Development, and product launch champions.

14. On May 17, 2019, Auerbach applied for a Territory Sales Manager position at iRhythm. The position would require him to work with doctors in the field and provide product training, support, and growth in sales.

15. On May 23, 2019, Auerbach had a telephone interview with Alem Shewarega ("Shewarega"), a recruiter at iRhythm. At this time, Auerbach did not disclose that he used the Zio Patch or that he was diagnosed with AFib.

16. After the interview, Shewarega recommended that Auerbach be given a second phone interview and continue through the application process.

17. On or about May 31, 2022, Plaintiff then had the second phone interview with iRhythm's regional sales director and hiring manager, Ashley Baker Zegar ("Zegar"). Auerbach discussed his familiarity with iRhythm's products, including the Zio Patch, at the interview. Zegar considered Auerbach's familiarity with the Zio Patch a plus. Auerbach did not disclose he was diagnosed with AFib.

18. On the same day as Auerbach's second phone interview, Zegar accessed Auerbach's records on iRhythm's patient database, which included his demographic information, clinical information, billing information, and PHI as defined under the Health Insurance Portability and Accountability Act ("HIPAA").

19. Auerbach did not authorize Zegar's access to his records and PHI.

20. Zegar did not access the medical records of any other applicant for the sales position at iRhythm.

21. On June 5, 2019, Auerbach had an in-person interview with Zegar and iRhythm's Area Vice President, JoLynn Short ("Short"). During the interview, Zegar revealed that she accessed Plaintiff's PHI. Auerbach stated, "You saw my profile, you saw my spikes?" Zegar responded, "Yes." Then Short asked, "You pulled his health data?" and Zegar said, "Yes."

22. This was the first time Auerbach learned Zegar accessed his PHI without his authorization. Auerbach was shocked and unsettled and the entire tone of the interview shifted and was uncomfortable.

23. On the same day as Auerbach's third interview, Zegar informed Shewarega that Auerbach would not be moving forward in the application process.

24. On June 10, 2019, Shewarega called Plaintiff, on June 10, 2019, to inform him that iRhythm decided not to hire him.

25. During the call, Plaintiff told Shewarega about Zegar accessing Plaintiff's PHI on iRhythm's patient database. Shewarega was shocked and informed upper management about Zegar's actions.

26. iRhythm investigated and confirmed Zegar accessed Auerbach's PHI without authorization and in violation of HIPAA. As a result, Zegar was terminated from iRhythm.

27. After Zegar's termination, Katelyn Broude, continued the interview process for the sales position with Short.

28. On or about June 13, 2019, iRhythm sent a letter to Auerbach notifying him that Ms. Zegar accessed his Protected Health information ("PHI") without authorization in violation of HIPAA.

29. On June 24, 2019, iRhythm hired a non-disabled applicant who was the only finalist for the Territory Sales Manager position and had less revenue experience than Plaintiff. Upon information and belief, this new hire is no longer working for iRhythm.

## COUNT I: ADA DISCRIMINATION

30. Plaintiff re-alleges paragraphs 1 through 29 and incorporates them as if fully set forth herein.

31. At all relevant times, Auerbach suffered from AFib.

32. Auerbach was qualified for the Territory Sales Manager position at iRhythm and could perform essential functions of the job.

33. Auerbach never voluntarily disclosed to iRhythm that he was diagnosed with AFib.

34. Zegar accessed Auerbach's PHI in order to assist her in making an employment decision.

35. Upon accessing Auerbach's PHI, iRhythm learned of Auerbach's AFib diagnosis.

36. During the in-person interview on June 5, 2019, when Zegar disclosed that she accessed Auerbach's PHI, by all accounts, the interview went poorly.

37. After accessing his PHI, iRhythm perceived Auerbach as suffering from a disability and as a result did not hire Auerbach for the Territory Sales Position.

38. Instead of hiring Auerbach, iRhythm hired an individual whose PHI iRhythm did not access and whom iRhythm perceived as non-disabled.

39. iRhythm intentionally discriminated against Auerbach and acted with reckless indifference to his rights under the ADA.

40. As a result, Auerbach suffered and continues to suffer economic damages, loss of income, embarrassment, financial loss, mental and emotional anguish, and other pecuniary and non-pecuniary damages.

WHEREFORE, Plaintiff respectfully and requests the following relief against Defendant:

a. Compensatory and punitive damages;

b. Pre- and post-judgment interest;

c. Attorney's fees and costs;

d. Tax enhancement payable to Plaintiff to avoid the inequity of income taxation charged to Plaintiff for any award of attorney's fees; and

e. Such other relief as the Court deems necessary.

## COUNT II: VIOLATION OF IHRA

41. Plaintiff re-alleges paragraphs 1 through 40 and incorporates them as if fully set forth herein.

42. Auerbach has a disability within the meaning of Section 1-103(I) of the Illinois Human Rights Act.

43. Auerbach was qualified for the Territory Sales Manager position at iRhythm and could perform essential functions of the job.

44. In order to assist iRhythm in making an employment decision, Zegar unlawfully accessed Auerbach's PHI without his consent.

45. As a result of the unlawful access to Auerbach's PHI, iRhythm learned Auerbach had a disability.

46. As a result of learning of Auerbach's disability, iRhythm refused to hire Auerbach.

47. iRhythm intentionally discriminated against Auerbach and acted with reckless indifference to his rights under the ADA.

48. As a result, Auerbach suffered and continues to suffer economic damages, loss of income, embarrassment, financial loss, mental and emotional anguish, and other pecuniary and non-pecuniary damages.

WHEREFORE, Plaintiff respectfully and requests the following relief against Defendant:

f. Compensatory and punitive damages;

g. Pre- and post-judgment interest;

h. Attorney's fees and costs;

i. Tax enhancement payable to Plaintiff to avoid the inequity of income taxation charged to Plaintiff for any award of attorney's fees; and

j. Such other relief as the Court deems necessary.

## COUNT III: INTRUSION UPON SECLUSION

49. Plaintiff re-alleges paragraphs 1 through 48 and incorporates them as if fully set forth herein.

50. HIPAA is a federal law mandating the creation of national standards to protect sensitive patient health information from being disclosed without the patient's consent or knowledge.

51. Auerbach had a reasonable expectation of privacy in his PHI. Auerbach never disclosed his AFib diagnosis with iRhythm.

52. To assist iRhythm in making an employment decision, Zegar intentionally accessed Auerbach's PHI without consent or authorization.

53. iRhythm's intrusion would be highly offensive or objectionable to a reasonable person as Auerbach's records contained personal and sensitive medical information.

54. iRhythm's intrusion into his PHI caused Auerbach anguish and suffering.

55. iRhythm acted with reckless indifference to Auerbach's rights under HIPAA, the ADA, and the IHRA when it pried into Auerbach's PHI.

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor against Defendant iRhythm, awarding him:

a. Compensatory damages;

b. Punitive damages; and

c. Such other and further relief as this Court deems appropriate and just.

**JURY DEMANDED**

Plaintiff hereby requests a trial by jury for all claims that may be tried by a jury.

Dated: May 24, 2022

        Respectfully Submitted,

        **JOHN AUERBACH**

        /s/ Thomas C. Koessl
        One of the Attorneys for Plaintiff

Thomas C. Koessl
Ashleigh A. Stochel
L&G Law Group, LLP
175 W. Jackson Blvd., Ste. 950
Chicago, IL 60604
312-364-2500
tkoessl@lgcounsel.com
astochel@lgcounsel.com

#1858492